UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Nicholas M. Martin, on behalf of himself and all other similarly situated,<br><br>                      Plaintiff,<br><br>vs.<br><br>Wells Fargo Bank, N.A.<br><br>                      Defendant. | Case No.: 16-cv-09483<br><br>Judge John J. Tharp<br><br>Magistrate Judge Sheila M. Finnegan |

## PLAINTIFF NICHOLAS MARTIN'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM

TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES ......................................................1

I.     INTRODUCTION ........................................................................ 1

II.    STATEMENT OF THE FACTS ................................................... 3

    A.    Procedural Background ..................................................... 3

    B.    Discovery ........................................................................... 3

    C.    The Parties' Mediation ..................................................... 4

    D.    The Proposed Settlement .................................................. 5

        1.    The Settlement Class ............................................ 5

        2.    Monetary Relief for Settlement Class Members .............. 6

        3.    *Cy Pres* Distributions ........................................... 7

        4.    Settlement Class Release ....................................... 7

        5.    Class Representative Service Award ...................... 7

        6.    Attorneys' Fees and Costs ..................................... 7

        7.    Administration and Notice .................................... 8

III.    ARGUMENT ............................................................................... 9

    A.    The Settlement Approval Process ..................................... 9

    B.    The Settlement Resulted from Arm's Length Negotiations and Is Not the Product of Collusion ..................................................... 12

    C.    The Settlement is Within the "Range of Reasonableness" for Preliminary Approval ........................................................... 13

        1.    The Settlement Provides Substantial Relief for Settlement Class Members, Particularly in Light of the Uncertainty of Prevailing on the Merits ........................................... 13

            a.    The Monetary Amount Offered in Settlement .................. 13

            b.    The Strength of Plaintiff's Case .......................... 14

        2.    Continued Litigation Is Likely to Be Complex, Lengthy, and Expensive ........................................... 16

        3.    There Is Currently No Opposition to the Settlement .................... 16

        4.    Class Counsel Strongly Endorse the Settlement ........................... 16

        5.    The Stage of the Proceedings and the Amount of Discovery Completed Supports Preliminary Approval .................................. 17

    D.    Provisional Certification of the Settlement Class Is Appropriate ............. 17

        1.    The Rule 23(a) Requirements Are Satisfied .................................... 18

2.      The Rule 23(b)(3) Requirements Are Satisfied .............................. 19

E.      The Proposed Notice Program Is Constitutionally Sound ........................ 20

IV.   CONCLUSION.................................................................................................. 21

## Cases

*Acosta v. Trans Union LLC*, 243 F.R.D. 377 (C.D. Cal. May 31, 2007) ............................................ 18

*Aliano v. Joe Caputo & Sons - Algonquin, Inc.,*
 No. 09 C 910, 2011 U.S. Dist. LEXIS 48323
 (N.D. Ill. May 5, 2011) ................................................................................................................ 15

*Am. Int'l Group, Inc. v. ACE INA Holdings, Inc.,*
 No. 07 C 2898, 2011 U.S. Dist. LEXIS 84219
 (N.D. Ill. July 26, 2011) .............................................................................................................. 11

*Amchem Prods. v. Windsor,*
 521 U.S. 591 (1997) .................................................................................................................... 19

*Armstrong v. Bd. of Sch. Dirs. of the City of Milwaukee,*
 616 F.2d 305 (7th Cir. 1980) ............................................................................................. 9, 11, 14

Berkey Photo, Inc. v. Eastman Kodak Co., 603 F.2d 263 (2d Cir. 1979) ........................................ 15

*Boggess v. Hogan,* 410 F. Supp. 433, 438 (N.D. Ill. 1975) ........................................................... 9

*Clark v. Experian Information Solutions, Inc.*
 2001 U.S. Dist. LEXIS 20024, 2001 WL 1946329, (D. S.C. March 19, 2001) ........................... 18

*Duncan v. JP Morgan Chase Bank, N.A.,* 5:14-cv-00912 (W.D. Tex. 2016) ................................. 14, 19

*Felzen v. Andreas,*
 134 F.3d 873 (7th Cir. 1998) ....................................................................................................... 10

*In re AT&T Mobility Wireless Data Servs. Sales Litig.,*
 270 F.R.D. 330 (N.D. Ill. 2010) .................................................................................................. 13

*In re Mexico Money Transfer Litig.,*
 164 F. Supp. 2d 1002 (N.D. Ill. 2000) ........................................................................................ 17

*Isby v. Bayh,*
 75 F.3d 1191 (7th Cir. 1996) ................................................................................................. 10, 11

*Kessler v. Am. Resorts International's Holiday Network, Ltd.,*
 Nos. 05 C 5944 & 07 C 2439,
 2007 U.S. Dist. LEXIS 84450
 (N.D. Ill. Nov. 14, 2007) ............................................................................................................. 11

*Levine v. World Fin. Network Nat. Bank,* 554 F.3d 1314 (11th Cir. 2009) .................................... 2

*Mars Steel Corp. v. Cont'l Ill. Nat. Bank and Trust Co. of Chicago*
 834 F. 2d 677, 684 (7th Cir. 1987) ............................................................................................. 12

*McCabe v. Crawford & Co.,*
 210 F.R.D. 631 (N.D. Ill. 2002) .................................................................................................. 18

*McKinnie v. JP Morgan Chase Bank, N.A.,*
 678 F. Supp. 2d 806 (E.D. Wis. 2009) ........................................................................................ 17

*Mullane v. Cent. Hanover Bank & Trust Co.,*
 339 U.S. 306 (1950) .................................................................................................................... 20

*Murray v. GMAC Mortgage Corp.,* 434 F.3d 948 (7th Cir. 2006) ................................................. 2

*Murray v. New Cingular Wireless Servs.,*
 232 F.R.D. 295 (N.D. Ill. 2005) .................................................................................................. 19

*Parker v. Risk Mgmt. Alternatives, Inc.,*
 206 F.R.D. 211 (N.D. Ill. 2002) ............................................................................................. 18, 19

*Phillips Randolph Enters., LLC v. Rice Fields*,
  No. 06 C 4968, 2007 U.S. Dist. LEXIS 3027
  (N.D. Ill. Jan. 11, 2007) ................................................................... 15
*Redman v. Radioshack Corp.*,
  No. 11 C 6741, 2014 U.S. Dist. LEXIS 15880
  (N.D. Ill. Feb. 7, 2014) .................................................................... 11
*Robert A. Pastor, et al. v. Bank of America NA*
  Case No. 3:15-cv-03831, (N.D. Ca. 2017) ........................................ 14
*Safeco Insurance Co. v. Burr*, 551 U.S. 47 (2007) ................................ 2, 15
*Schulte v. Fifth Third Bank*,
  805 F. Supp. 2d 560 (N.D. Ill. 2011) ................................................ 16
*Speer v. Whole Food Mkt. Group, Inc.*
  No. 14-cv-3035, 2015 U.S. Dist. LEXIS 40462 (M.D. Fla. Mar. 30, 2015) ................................... 2
*Synfuel Techs, Inc. v. DHL Express (USA), Inc.*,
  463 F.3d 646 (7th Cir. 2006) ............................................................ 13
*Van Straaten v. Shell Oil Prods. Co. LLC*, 678 F.3d 486 (7th Cir. 2012) ............................... 2
*West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710 (S.D.N.Y. 1970) ............................ 15
*West Virginia v. Chas. Pfizer & Co.*, 440 F.2d 1079 (2d Cir. 1971) ................................. 15

## Statutes

Fair Credit Reporting Act, 15 U.S.C. § 1681 ............................................. 1

## Other Authorities

4 *Newberg on Class Actions* §§ 11.25 and 11.41 (4th ed. 2002) .................. 9, 10, 12
*Manual for Complex Litig.*,
  at §§ 13.14, 21.312, 21.632, and 21.633 (Fourth) (2004) .......................... 10, 12, 17, 20

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION

Plaintiff Nicholas M. Martin respectfully moves the Court for preliminary approval of the nationwide class action settlement ("Agreement") reached between Plaintiff Martin ("Plaintiff" or "Martin") and Defendant Wells Fargo Bank, N.A. ("Wells Fargo") that is attached hereto as *Exhibit 1*. The proposed Settlement would resolve all claims in the above-entitled action. Plaintiff alleges that Wells Fargo violated the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA"), by obtaining or using Plaintiff and class members' consumer reports without a permissible purpose as set forth in § 1681b(a)(3).

Under the Settlement Wells Fargo is required to pay $2,500,000 into a settlement fund ("Fund") for a class consisting of borrowers with a Wells Fargo mortgage account that was not excluded from one or more of the quarterly account reviews undertaken in the Relevant Time Period[1] and where such mortgage account had a balance of $0.00 at the time of such quarterly account review. Wells Fargo's investigation has revealed that there are 77,656 such accounts, some of which accounts have two borrowers, each of whom will be sent a Notice[2]. Settlement Class Members who file valid claims will receive a *pro rata* cash payment from this Fund. Not a single penny of the Fund will revert back to Wells Fargo. Plaintiff expects each claimant will receive $275 based on a 5% claim rate.

This action involves sharply opposing positions on the issue of willfulness under the FCRA. Liability under the FCRA is not strict and only arises upon a finding of negligence or willful failure to comply. 15 U.S.C. §§ 1681n & 1681o. Absent a finding of a willful noncompliance, Plaintiff, and thus the Class, must establish actual damages. Statutory and punitive damages are *only* available

---

[1]     The "Relevant Time Period" refers to the second, third, and fourth quarters of 2015 and the first, second, and third quarters of 2016 inclusive.

[2]     A total of 109,747 borrowers will be sent notice.

where there is a finding of a willful violation. *See id.* Plaintiff in this matter elected to pursue statutory and punitive damages on behalf of the class under the more challenging "willfulness" standard of Section 1681n.

Wells Fargo contends that under *Safeco Insurance Co. v. Burr,* 551 U.S. 47 (2007), Wells Fargo's access or use of the consumer reports was not willful because it was allegedly the result of a computer scripting error that resulted in account reviews which were not clearly prohibited by the statutory text, federal regulation, or a binding court of appeal decision. *See Safeco Ins. Co.*, 551 U.S. at 67-70; *Van Straaten v. Shell Oil Prods. Co. LLC*, 678 F.3d 486, 490-91 (7th Cir. 2012). Plaintiff contends that *Safeco* held that a violation of the FCRA is "willful" if it is either knowing *or* reckless. *Id.* at 47. Plaintiff contends these are two distinct tests. *Id.*; *see also Speer v. Whole Food Mkt. Group, Inc.*, No. 14-cv-3035, 2015 U.S. Dist. LEXIS 40462 at *9 (M.D. Fla. Mar. 30, 2015) (willfulness covers both "reckless violations as well as knowing violations of the FCRA."), *citing Safeco*, 551 U.S. at 57-58.

Wells Fargo also argued that courts have recognized that section 1681b of FCRA "is far from 'pellucid,'" in that it does not clearly "distinguish between closed and open accounts" when providing that review of an account is a permissible purpose for obtaining a consumer report. *See Levine v. World Fin. Network Nat. Bank,* 554 F.3d 1314, 1318-19 (11th Cir. 2009). Regardless, Plaintiff faces the burden of proving that Wells Fargo's actions were "objectively unreasonable." *Id.* at 69.

With this motion, Plaintiff seeks preliminary approval of the Settlement and provisional certification of a nationwide class for purposes of providing the Settlement Class with notice of the Settlement and an opportunity to opt-out, object, or otherwise be heard. The proposed Settlement satisfies all criteria for preliminary settlement approval under Seventh Circuit law. *See e.g. Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 953 (7th Cir. 2006) (Finding statutory damages an appropriate class remedy to overcome the manageability difficulties of compensable damages for consumers

whose individual losses "are likely to be small—a modest concern about privacy, a slight chance that information would leak out and lead to identity theft.").

## II.     STATEMENT OF THE FACTS

### A.     Procedural Background

On October 4, 2016, Plaintiff filed a complaint in the United States District Court for the Northern District of Illinois alleging that Wells Fargo negligently and willfully violated FCRA by obtaining Plaintiff's consumer report from a consumer reporting agency in March and June 2016 at which times Plaintiff's Wells Fargo mortgage loan account had a principal balance of zero.  *See* Dkt. No. 1.  Plaintiff asserted his claims on behalf of a putative nationwide class of consumers whose consumer reports Wells Fargo obtained "where the consumer did not have an existing account relationship during the applicable statute of limitations period."  *See id.*

Wells Fargo filed an answer to the Complaint on November 21, 2016 in which answer Wells Fargo denied that it violated FCRA and asserted various affirmative defenses.  *See* Dkt. No. 17.

### B.     Discovery

Between November 2016 and July 2017, inclusive, the Parties engaged in substantial written discovery as to the claims and defenses asserted.  *See* Dkt. Nos. 21, 52, 62 and 73 and *Exhibit 2* ¶7 (Declaration of Keith J. Keogh).  Plaintiff filed two motions to compel.  On March 15, 2017, the Court "denied in part as moot, granted in part and entered and continued in part," Plaintiff's first motion to compel and directed the Parties "to proceed with initial discovery in the manner described on the record."  *See* Dkt. No. 44.  In so ruling, the Court phased discovery, and directed Plaintiff to limit his discovery requests within the scope of the Court's phasing order.  *See* Transcript of March 15, 2017 Hearing.  On April 12, 2017, the Court "denied without prejudice" the motion to compel "as to any matter the Court had taken under advisement" and directed the Parties "to proceed with phased discovery as described in open court."  *See* Dkt. No. 52.

On April 26, 2017, Plaintiff filed an objection to the order denying his motion to compel discovery and on May 3, 2017, the District Court overruled Plaintiff's objection without prejudice as premature. *See* Dkt. No. 60.

On June 8, 2017, the Court denied Plaintiff's second motion to compel without prejudice "… based on Defendant's representation that it has conducted a reasonable search for materials responsive to discovery requests as narrowed by the Court during Phase 1 and that it has produced all responsive and non−privileged documents." Dkt. No. 72.

On June 15, 2017, pursuant to the Court's order, Wells Fargo produced a privilege log with respect to certain internal communications that are protected from disclosure under the attorney-client privilege and the work product doctrine.

On July 17, 2017, Wells Fargo filed a motion for protective order with respect to the deposition topics that Plaintiff identified in his notice to take Wells Fargo's deposition pursuant to Fed. R. Civ. P. 30(b)(6). *See* Dkt. No. 77.

On July 20, 2017, the Court allowed Wells Fargo's motion for protective order and took under advisement Wells Fargo's request for attorneys' fees in connection with that motion. *See* Dkt. No. 82.

## C.     The Parties' Mediation

After the July 20, 2017 hearing, the Parties agreed to participate in private mediation. *See Exhibit 2* ¶13. The parties scheduled a one-day in-person mediation session for October 5, 2017 in Washington, DC with Jonathan Marks of MarksADR[3]. *Id.* In advance of the mediation session, the

---

[3] Mr. Marks has been a full-time mediator and arbitrator since 1981, when he co-founded Endispute, the United States' first full-service ADR firm. From 1994, he was Vice-Chairman of JAMS-Endispute. For the past decade, Mr. Marks has served as mediator/arbitrator with MARKSADR, LLC. In his 31 years as a full-time mediator and arbitrator, he has handled more than 1,500 major disputes, many of which were high profile litigation matters, including the lengthy mediation involving Microsoft, the Department of Justice and a number of states. http://www.nadn.org/jonathan-marks   Last visited December 4, 2017.

Parties exchanged mediation statements and conducted multiple telephonic sessions with Mr. Marks[4].

At the conclusion of the October 5, 2017 mediation session, the Parties reached an agreement in principal to settle Plaintiff's claims on a class-wide basis. At all times, the settlement negotiations were highly adversarial, non-collusive, and at arm's length.[5] The parties then spent substantial time negotiating the terms of the settlement agreement.

### D.      **The Proposed Settlement**

The Settlement's details are contained in the Agreement signed by the parties, a copy of which is attached as *Exhibit 1*. For purposes of preliminary approval, the following summarizes the Agreement's terms:

### 1.      **The Settlement Class**

The Settlement Class is defined as follows:

> Any borrower with a Wells Fargo mortgage account that was not excluded from one or more of the quarterly account reviews undertaken in the Relevant Time Period (the "Quarterly Account Reviews") and where such mortgage account had a balance of $0.00 at the time of such Quarterly Account Review.

Agreement § 1.29.

Wells Fargo's investigation has revealed that there are 77,656 such accounts, some of which accounts have two borrowers for a total of 109,747 borrowers, each of whom will be sent a Notice pursuant to paragraph 4.3(a) and will be entitled to submit a Claim Form pursuant to paragraphs 2.2 and 2.3 for a payment from the Settlement Fund. *Id.* Excluded from the Settlement Class are (a) any Judge or Magistrate Judge presiding over this action and members of their immediate families; (b) Wells Fargo, Wells Fargo's subsidiaries, parents, successors, predecessors, and any entity in which Wells Fargo or its parents have a controlling interest and their current or former officers,

---

[4] *Id.*

[5] *Id.* at ¶14.

directors, agents, attorneys and employees; and (c) counsel for all Parties and members of their families. *Id.* Persons within the Settlement Class may opt out of the Settlement and thus not become Settlement Class Members. *Id.* §§ 5.5-5.8.

### 2. Monetary Relief for Settlement Class Members

The Settlement requires Wells Fargo to create a non-reversionary Settlement Fund of $2,500,000. Agreement § 1.31. Out of this Fund, Settlement Class Members who file a valid claim will receive a cash payment. *Id.* §§ 1.30-1.31. The amount of each Settlement Class Member's payment will be based on a *pro rata* distribution, depending on the number of valid and timely claims. *Id.* § 2.3. No amount of the Settlement Fund will revert to Wells Fargo. *Id.* § 1.31. While it is not possible to predict the precise amount of each *pro rata* payment until all claims have been submitted, Class Counsel, based on their experience in similar class actions, estimate awards of $275 assuming a five percent claim rate after deductions for Court-approved attorneys' fees and costs, any Court-approved incentive award to the Plaintiff, and costs of notice and claims administration[6].

Checks for Settlement payments will be valid for 120 days from the date of the check. *Id.* § 2.5. If, after the expiration date of the checks distributed, there remains money in the Settlement Fund sufficient to pay at least ten dollars ($10.00) to each Settlement Class Member who submitted a valid and timely claim and did not fail to cash his or her initial Settlement payment check, such remaining monies will be distributed on a *pro rata* basis to those Settlement Class Members (the "Second Distribution"). *Id.* § 2.6.

In order to exercise the right to obtain the relief outlined above, Settlement Class Members need only complete a simple, one-page claim form and provide it to the Settlement Administrator via the Settlement Website or by mail. *Id.* § 4.3.

---

[6] The claims administrator has agreed to cap administration costs at $137,928 barring unforeseen changes in the administration.

### 3.    *Cy Pres* **Distributions**

Only if a Second Distribution is not feasible or if there remains money in the Settlement Fund after the Second Distribution will the remaining money be donated to a *cy pres*. *Id.* § 2.6-2.7. Subject to Court approval, the parties have selected Veterans Plus, which is a national organization that focuses on securing financial freedom through education, coaching and financial literacy programs. http://www.veteransplus.org/ last visited December 4, 2017.

### 4.    **Settlement Class Release**

In exchange for the benefits allowed under the Settlement, Settlement Class Members who do not opt out will provide a release tailored to the practices at issue in this case. Specifically, they will release all claims related to "(a) the alleged review, by Wells Fargo, of a borrower's consumer report with respect to any mortgage account that had a balance of $0.00 at the time of such review; and (b) any of the allegations in the Complaint which could have been brought under any state or federal law." *Id.* § 1.22.

### 5.    **Class Representative Service Award**

The Settlement Agreement provides that Plaintiff may petition the Court for a service award. There is no clear sailing provision as to this request. The service award shall be paid out of the Settlement Fund and is subject to this Court's approval; neither Court approval nor the amount of the service award is a condition of the Settlement. *Id.* § 9.3-9.4. In light of the fact that Plaintiff has fully participated in this case, Plaintiff will request an incentive award of $10,000. The Class Notice will advise the Settlement Class of Plaintiff's request.

### 6.    **Attorneys' Fees and Costs**

Prior to the Final Approval hearing and prior to the objection deadline, Class Counsel will apply to the Court for an award of attorneys' fees and costs. *Id.* §§ 9.1-9.2. As will be addressed in Class Counsel's motion for attorneys' fees, courts in this district commonly award approximately

one third plus reasonable expenses in common fund FCRA class settlements after settlement administration costs are deducted, particularly in cases involving a non-reversionary common fund of this size. This amount is appropriate to compensate Class Counsel in this amount here for the work they have performed in procuring a settlement for the Settlement Class, as well as the work remaining to be performed in documenting the settlement, securing Court approval of the settlement, overseeing settlement implementation and administration, assisting Settlement Class Members, and obtaining dismissal of the action. It should be noted, however, that the enforceability of the Settlement is not contingent on Court approval of an award of attorneys' fees or costs. *Id.* Further, the Settlement Notice will inform the Settlement Class Members that Class Counsel will seek 33% of the class benefit. As with the incentive award to Plaintiff, the Settlement Agreement does not contain a clear sailing agreement as to attorney fees or costs.

### 7.   Administration and Notice

All costs of notice and claims administration shall be paid by Wells Fargo from the Settlement Fund. The Settlement Administrator will be Epiq Class Action & Mass Tort Solutions, Inc., subject to this Court's approval. *Id.* § 1.28. The Settlement Administrator shall administer the Settlement, which includes the following duties: (1) issuing Notice and Claim Forms; (2) setting up and maintaining the Settlement Website; (3) accepting Claim Forms; (4) and issuing settlement payments. *Id.* §§ 6.

Within thirty (30) of the entry of Preliminary Approval Order, the Settlement Administrator will issue the Notice (Exhibit B to the Agreement) by direct mail to all Persons within the Settlement Class in accordance with the Notice plan described in the Settlement Agreement. *Id.* § 4.3(a),

Further, the Settlement Administrator will establish and maintain a Settlement Website. *Id.* § 4.3(b). The Settlement Website will provide for online submission of claims and will also include general information such as the Settlement Agreement; Website Notice; the Preliminary Approval

Order; Claim Form for any Settlement Class Member wanting to print a hard copy of and mail in the Claim Form; Claim Form for any Settlement Class Member wanting to submit an electronic copy of the Claim Form; the operative Complaint; the attorney fee motion and any other materials the Parties agree to include. *Id.*; *see also* Exhibit C to the Agreement.  As noted above, the estimated costs for these services is $137,928.

## III.  ARGUMENT

### A.  The Settlement Approval Process

Under Fed. R. Civ. P. 23(e)(1)(C), a court may approve a class action settlement if it is "fair, adequate, and reasonable, and not a product of collusion." There is usually a presumption of fairness when a proposed class settlement "is the product of arm's length negotiations, sufficient discovery has been taken to allow the parties and the court to act intelligently, and counsel involved are competent and experiences." H. Newberg, A. Conte, Newberg on Class Actions § 11.41 (4th ed. 2002); *Goldsmith v. Technology Solutions Co.*, No. 92 C 4374, 1995 U.S. Dist. LEXIS 15093, at *10 n.2 (N.D. Ill. Oct. 10, 1995); *Boggess v. Hogan*, 410 F. Supp. 433, 438 (N.D. Ill. 1975).

As the Seventh Circuit has recognized, federal courts strongly favor and encourage settlements, particularly in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain:

> It is axiomatic that the federal courts look with great favor upon the voluntary resolution of litigation through settlement.  In the class action context in particular, there is an overriding public interest in favor of settlement. Settlement of the complex disputes often involved in class actions minimizes the litigation expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources.

*Armstrong v. Bd. of Sch. Dirs. of the City of Milwaukee*, 616 F.2d 305, 312-13 (7th Cir. 1980) (citations and quotations omitted), overruled on other grounds by *Felzen v. Andreas*, 134 F.3d 873, 875 (7th Cir.

1998); *see also Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation."); 4 *Newberg on Class Actions* § 11.41 (4th ed. 2002) (citing cases). The traditional means for handling claims like those at issue here—individual litigation—would unduly tax the court system, require a massive expenditure of public and private resources and, given the relatively small value of the claims of the individual class members, would be impracticable. Thus, the proposed Settlement is the best vehicle for Settlement Class Members to receive relief to which they are entitled in a prompt and efficient manner.

The *Manual for Complex Litigation* (Fourth) (2004) § 21.63 describes a three-step procedure for approval of class action settlements:

> (1)  Preliminary approval of the proposed settlement at an informal hearing;
>
> (2)  Dissemination of mailed and/or published notice of the settlement to all affected class members; and
>
> (3)  A "formal fairness hearing" or final settlement approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

This procedure, used by courts in this Circuit and endorsed by class action commentators, safeguards class members' due process rights and enables the Court to fulfill its role as the guardian of class interests. 4 *Newberg* § 11.25.

With this motion, Plaintiff requests that the Court take the first step in the settlement approval process by granting preliminary approval of the proposed Settlement. The purpose of preliminary evaluation of proposed class action settlements is merely to determine whether the settlement is within the "range of possible approval," and thus whether notice to the class of the settlement's terms and holding a formal fairness hearing would be worthwhile. *Am. Int'l Group, Inc. v. ACE INA Holdings, Inc.*, No. 07 C 2898, 2011 U.S. Dist. LEXIS 84219, at *32-33 (N.D. Ill. July 26,

2011) (citing *Armstrong*, 616 F.2d at 314). Accordingly, at the preliminary approval stage, courts need not "conduct a full-fledged inquiry into whether the settlement meets Rule 23(e)'s standards." *Id.*

When determining whether a settlement is ultimately fair, adequate, and reasonable at the "final approval" stage, courts in this Circuit consider the following factors:

> (1) the strength of plaintiffs' case compared to the terms of the proposed settlement;
>
> (2) the likely complexity, length, and expense of continued litigation;
>
> (3) the amount of opposition to settlement among affected parties;
>
> (4) the opinion of competent counsel; and
>
> (5) the stage of the proceedings and the amount of discovery completed.

*Isby*, 75 F.3d at 1199. While not required, courts often consider these factors to determine whether the settlement falls within the range of possible approval at the preliminary approval stage. *See, e.g., Am. Int'l Group*, 2011 U.S. Dist. LEXIS 84219, at *33 ("[A]lthough neither the Federal Rules of Civil Procedure nor binding case law requires it, courts in this district have performed 'a more summary version' of the final fairness inquiry at the preliminary approval stage."); *Kessler v. Am. Resorts International's Holiday Network, Ltd.*, Nos. 05 C 5944 & 07 C 2439, 2007 U.S. Dist. LEXIS 84450, at *17 (N.D. Ill. Nov. 14, 2007) ("Although this [fair, reasonable, and adequate] standard and the factors used to measure it are ultimately questions for the fairness hearing that comes after a court finds that a proposed settlement is within approval range, a more summary version of the same inquiry takes place at the preliminary phase."). In reviewing these factors, courts view the facts "in a light most favorable to the settlement." *Redman v. Radioshack Corp.*, No. 11 C 6741, 2014 U.S. Dist. LEXIS 15880, at *9 (N.D. Ill. Feb. 7, 2014) (citing *Isby*, 75 F.3d at 1199). In addition, courts "should not substitute [their] own judgment as to the best outcomes for litigants and their counsel." *Id.* (citing *Armstrong*, 616 F.2d at 315).

Granting preliminary approval of the Settlement will allow all Persons within the Settlement Class to receive notice of the proposed Settlement's terms and the date and time of the final settlement approval hearing, at which Settlement Class Members may voice approval of or opposition to the Settlement, and at which the parties and Settlement Class Members may present further evidence and argument concerning the fairness, adequacy, and reasonableness of the Settlement. *See Manual for Compl. Lit.*, at §§ 13.14, § 21.632.

**B.** **The Settlement Resulted from Arm's Length Negotiations and Is Not the Product of Collusion**

As a leading treatise on class action jurisprudence explains, "decisions indicate that the courts respect the integrity of counsel and presume the absence of fraud or collusion in negotiating the settlement, unless evidence to the contrary is offered." *Newberg*, §11.51. The requirement that a settlement be fair is designed to protect against collusion among the parties. *Mars Steel Corp. v. Cont'l Ill. Nat. Bank and Trust Co. of Chicago*, 834 F. 2d 677, 684 (7th Cir. 1987) (approved settlement upon finding of no "hanky-pank" in negotiations). There usually is an initial presumption that a proposed settlement is fair and reasonable when it was the result of arm's length negotiations. *Newberg*, §11.42.

As detailed above, the Settlement is the result of over a year of litigation, a formal mediation, and additional extensive, arm's-length negotiations between attorneys experienced in the litigation, certification, trial, and settlement of nationwide class actions. Counsel for both parties are also experienced in litigating class actions and understand the legal and factual issues involved in this case.

Also, as detailed above, Class Counsel thoroughly investigated and analyzed Plaintiff's FCRA claims and conducted written discovery to identify the Settlement Class and prosecute the class claims. Through this discovery, Class Counsel learned information regarding Wells Fargo's policies and procedures with respect to its procurement and use of consumer reports.

As a result, Class Counsel were well-positioned to evaluate the strengths and weaknesses of the case, as well as the appropriate basis upon which to settle it.

## C. The Settlement is Within the "Range of Reasonableness" for Preliminary Approval

The Settlement meets all of the factors relevant to final approval, and thus the Settlement should be preliminarily approved.

### 1. The Settlement Provides Substantial Relief for Settlement Class Members, Particularly in Light of the Uncertainty of Prevailing on the Merits

"The most important factor relevant to the fairness of a class action settlement is the first one listed: the strength of the plaintiff's case on the merits balanced against the amount offered in the settlement." *Synfuel Techs, Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006) (internal quotes and citations omitted). Nevertheless, "[b]ecause the essence of settlement is compromise, courts should not reject a settlement solely because it does not provide a complete victory to the plaintiffs." *In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 347 (N.D. Ill. 2010) (citations omitted).

#### a. The Monetary Amount Offered in Settlement

The Settlement requires Wells Fargo to pay $2,500,000 into the Settlement Fund. Out of this fund, all Settlement Class Members who make a valid claim will receive their *pro rata* share of cash payments. *Exhibit 1*. The Settlement Fund is non-reversionary, ensuring that nearly all monetary benefits will go to Settlement Class Members. Furthermore, the monetary amount achieved by the Settlement is an outstanding result for Settlement Class Members, particularly because FCRA § 1681b(a)(3) damages are purely statutory damages, in that Settlement Class Members have hard-to-quantify out-of-pocket losses or other economic harm.

Class Counsel acknowledge that the $2,500,000 Settlement Fund does not constitute the full measure of statutory damages potentially available to the Settlement Class. This fact alone, however,

should not weigh against preliminary approval. "Because settlement of a class action, like settlement of any litigation, is basically a bargained exchange between the litigants, the judiciary's role is properly limited to the minimum necessary to protect the interests of the class and the public. Judges should not substitute their own judgment as to optimal settlement terms for the judgment of the litigants and their counsel." *Armstrong*, 616 F.2d at 315. The Settlement was reached after extensive factual investigation and discovery of the claims and issues and after taking into consideration the risks involved in the action, after extensive arm's-length negotiations presided over by an experienced mediator. Further, the Settlement compares favorably to other FCRA class actions settlements.

Indeed, this settlement exceeds many similar FCRA class action settlements that have been final approved. *See e.g. Robert A. Pastor, et al. v. Bank of America NA*, Case No. 3:15-cv-03831, (N.D. Ca. 2017) ($1.645 million for a class of 537,000 class members whose credit reports were obtained post-bankruptcy discharge); *Duncan v. JP Morgan Chase Bank, N.A.*, 5:14-cv-00912 (W.D. Tex. 2016) ($ 8.75Million with over 2,000,000 class members for class alleging impermissible pulls of credit).

For all of the above reasons, the monetary amount recovered through the Settlement—on par with FCRA settlements found to be fair, adequate, and reasonable—is a great result for the Settlement Class.

### b.     The Strength of Plaintiff's Case

Plaintiff continues to believe that his claim against Defendant has merit and that he would make a compelling case if his claims were tried. Nevertheless, Plaintiff and the Settlement Class would face a number of difficult challenges if the litigation were to continue.

As set out above, the main disputes in this matter are 1) was there a violation of the FCRA and if so, 2) was that violation willful. As noted above, Wells Fargo contends there was no violation of the FCRA and that in any event, any violation was not willful. While Plaintiff continues to believe

that victory would be achievable, it would be difficult to prove that Wells Fargo's review of the mortgage loans at issue in this case was "objectively unreasonable." *Safeco*, 551 U.S. at 69.

In addition, at least some courts view awards of aggregate, statutory damages with skepticism and reduce such awards—even after a plaintiff has prevailed on the merits—on due process grounds. *See, e.g., Aliano v. Joe Caputo & Sons - Algonquin, Inc.,* No. 09 C 910, 2011 U.S. Dist. LEXIS 48323, *13 (N.D. Ill. May 5, 2011) ("[T]he Court cannot fathom how the minimum statutory damages award for willful FACTA violations in this case — between $100 and $1,000 per violation — would not violate Defendant's due process rights . . . . Such an award, although authorized by statute, would be shocking, grossly excessive, and punitive in nature."); *but see Phillips Randolph Enters., LLC v. Rice Fields*, No. 06 C 4968, 2007 U.S. Dist. LEXIS 3027, *7-8 (N.D. Ill. Jan. 11, 2007) ("Contrary to [defendant's] implicit position, the Due Process clause of the 5th Amendment does not impose upon Congress an obligation to make illegal behavior affordable, particularly for multiple violations.").

Finally, there remains a risk of losing a jury trial. And, even if Plaintiff did prevail at trial, any judgment could be reversed on appeal. *See West Virginia v. Chas. Pfizer & Co.,* 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970) ("It is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is often misplaced."), *aff'd,* 440 F.2d 1079 (2d Cir. 1971); *see also Berkey Photo, Inc. v. Eastman Kodak Co.,* 603 F.2d 263 (2d Cir. 1979) (reversing $87 million judgment after trial).

Despite these disagreements, the parties reached a settlement after participating in a robust mediation, as set out above. The Settlement provides substantial relief to Settlement Class Members without delay and is within the range of reasonableness, particularly in light of the above risks that Settlement Class Members would face in litigation.

### 2. Continued Litigation Is Likely to Be Complex, Lengthy, and Expensive

Litigation would be lengthy and expensive if this action were to proceed. Although the parties engaged in significant discovery efforts, continued litigation would involve additional discovery and extensive motion practice, including Plaintiff's motion for class certification and a motion by Wells Fargo for summary judgment. Any judgment in favor of Settlement Class Members could be further delayed by the appeal process. Instead of facing the uncertainty of a potential award in their favor years from now, the Settlement allows Plaintiff and Settlement Class Members to receive immediate and certain relief. *See, e.g., Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011) (citation omitted) ("Settlement allows the class to avoid the inherent risk, complexity, time, and cost associated with continued litigation.").

### 3. There Is Currently No Opposition to the Settlement

All parties favor settlement. But because notice has not yet been sent to the Settlement Class, this factor cannot be fully evaluated prior to the final fairness hearing.

### 4. Class Counsel Strongly Endorse the Settlement

Class Counsel and Plaintiff strongly endorse this Settlement.[7] Class Counsel's opinion on the Settlement is entitled to great weight, particularly because: (1) Class Counsel are competent and experienced in class action litigation (particularly in consumer class action cases);[8] (2) Class Counsel litigated this case, and in doing so, engaged in formal and informal discovery and exhaustively evaluated the claims[9]; and (3) the Settlement was reached at arm's length through negotiations between experienced counsel and through a full-day mediation session before an experienced

---

[7] *Keogh Decl.* ¶ 18,.

[8] *Keogh Decl.*. ¶¶ 4-6 and 20-29,

[9] *Keogh Decl.* ¶¶ 7-14.

mediator.[10] *See McKinnie v. JP Morgan American Express Bank, N.A.,* 678 F. Supp. 2d 806, 812 (E.D. Wis. 2009) (factors including that "counsel endorses the settlement and it was achieved after arms-length negotiations facilitated by a mediator . . . suggest that the settlement is fair and merits final approval."); *see also In re Mexico Money Transfer Litig.,* 164 F. Supp. 2d 1002, 1020 (N.D. Ill. 2000) (placing "significant weight on the unanimously strong endorsement of these settlements" by "well-respected attorneys"). This factor therefore weighs in favor of preliminary approval.

### 5. The Stage of the Proceedings and the Amount of Discovery Completed Supports Preliminary Approval

The Settlement was reached after more than a year of litigation. As noted above, discovery has been robust. At the time of the settlement, Class Counsel had the information necessary to confirm that the Settlement is fair, reasonable, and adequate.[11]

### D. Provisional Certification of the Settlement Class Is Appropriate

For settlement purposes, Plaintiff respectfully requests that the Court provisionally certify the Settlement Class defined in the Agreement. Agreement § 1.29. Provisional certification for settlement purposes permits notice of the proposed Settlement to issue to inform Persons within the Settlement Class of the existence and terms of the proposed Settlement, their right to be heard on its fairness, their right to opt out, and the date, time and place of the formal fairness hearing. *See Manual for Compl. Lit.,* at §§ 21.632, 21.633. Defendant has agreed to provisional certification of the Settlement Class, as defined in the Agreement, solely for purposes of this Settlement. For the reasons set forth below, provisional certification is appropriate under Federal Rule of Civil Procedure Rule 23.

---

[10] As noted above, Mr. Marks has been a full-time mediator and arbitrator since 1981. *http://www.nadn.org/jonathan-marks* Last visited December 4, 2017.

[11] *Id.* ¶ 7-15.

### 1. The Rule 23(a) Requirements Are Satisfied

The numerosity requirement of Rule 23(a) is satisfied because the Settlement Class consists of 109,747 borrowers for approximately 77,656 mortgage accounts throughout the United States whose mortgage accounts were not excluded from one or more of the quarterly account reviews undertaken by Wells Fargo in the second, third, or fourth quarters of 2015 or the first, second, or third quarters of 2016 inclusive (the "Quarterly Account Reviews") and where such mortgage accounts had a balance of $0.00 at the time of such Quarterly Account Review. *See McCabe v. Crawford & Co.,* 210 F.R.D. 631, 643 (N.D. Ill. 2002) (a class of forty or more is generally sufficient to establish numerosity).

The commonality requirement is satisfied because there are many questions of law and fact common to the Settlement Class that center on Wells Fargo's allegedly impermissible procurement of the consumer reports of Settlement Class Members. *See Parker v. Risk Mgmt. Alternatives, Inc.,* 206 F.R.D. 211, 213 (N.D. Ill. 2002) ("[A] common nucleus of operative fact is usually enough to satisfy the [commonality] requirement."); *G.M. Sign, Inc. v. Finish Thompson, Inc.,* No. 07 C 5953, 2009 U.S. Dist. LEXIS 73869, *12 (N.D. Ill. Aug. 20, 2009); *Acosta v. Trans Union LLC,* 243 F.R.D. 377, 384 (C.D. Cal. May 31, 2007) (common question of whether defendants maintained reasonable procedures to assure maximum accuracy satisfied commonality prerequisite); *Clark v. Experian Information Solutions, Inc.,* 2001 U.S. Dist. LEXIS 20024, 2001 WL 1946329, at *2 (D. S.C. March 19, 2001) (holding that question of "[w]hat reasonable procedures, if any, have been set up by the Defendants to assure maximum accuracy of the information contained in the consumer report, including information regarding or related to bankruptcy" among other questions satisfied the commonality requirement of Rule 23(a)(2)).

The typicality requirement is satisfied because Plaintiff's FCRA claims, which are based on allegedly impermissible procurement of a consumer report, arise out of the same "event, practice or

course of conduct that gives rise to the claim[s] of the other class members" and "are based on the same legal theory." *Parker*, 206 F.R.D. at 213.

The adequacy of representation requirement is satisfied because Plaintiff's interests are coextensive with, and not antagonistic to, the interests of the Settlement Class. *See G.M. Sign,* 2009 U.S. Dist. LEXIS 73869, at *15-16. Further, Plaintiff is represented by qualified and competent counsel who have extensive experience and expertise in prosecuting complex class actions, including FCRA actions. *See id.*; *Keogh Decl.* ¶¶ 15-25.

## 2. The Rule 23(b)(3) Requirements Are Satisfied

The predominance requirement of Rule 23(b)(3) is satisfied because common questions comprise a significant aspect of the case and can be resolved for all Settlement Class Members in a single adjudication. Common issues predominate here because the claims of the Settlement Class Members arise from Wells Fargo's alleged common practice of procuring a consumer report without a permissible purpose. *See Duncan v. JPMorgan Chase Bank, N.A.*, No. SA-14-CA-00912-FB, 2016 U.S. Dist. LEXIS 122663, at *13 (W.D. Tex. May 23, 2016) (common issues predominate because the central issue of whether Chase conducted systematic account reviews on class members' credit files can be established through generalized evidence.). The issues of whether there was a violation of the FCRA and whether any such violation was willful is the same issue for all class members.

Because the claims are being certified for purposes of settlement, there are no issues with manageability. *Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial."). And, resolution of thousands of claims in one action is far superior to individual lawsuits, and promotes consistency and efficiency of adjudication. *See Sadowski*, 2008 U.S. Dist. LEXIS 41766, at *14 (quoting *Murray v. New Cingular Wireless Servs.*, 232 F.R.D. 295, 303 (N.D. Ill. 2005)) ("In consumer

actions involving small individual claims, such as this one, class treatment is often appropriate because each member's damages 'may be too insignificant to provide class members with incentive to pursue a claim individually.'"). For these reasons, certification of the Settlement Class for purposes of settlement is appropriate.

### E.    The Proposed Notice Program Is Constitutionally Sound

"Rule 23(e)(1)(B) requires the court to 'direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise' regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)." *Manual for Compl. Lit., supra*, at § 21.312. The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).  According to the *Manual*, *supra*, at § 21.312, the settlement notice should do the following:

- Define the class;

- Describe clearly the options open to the class members and the deadlines for taking action;

- Describe the essential terms of the proposed settlement;

- Disclose any special benefits provided to the class representatives;

- Provide information regarding attorneys' fees;

- Indicate the time and place of the hearing to consider approval of the settlement, and the method for objecting to or opting out of the settlement;

- Explain the procedures for allocating and distributing settlement funds, and, if the settlement provides different kinds of relief for different categories of class members, clearly set out those variations;

- Provide information that will enable class members to calculate or at least estimate their individual recoveries; and

- Prominently display the address and phone number of class counsel and the procedure for making inquiries.

The proposed forms of Notice, attached as Exhibits B and C to the Agreement, satisfy all of the criteria above. The Notice plan provides for direct, individual notice via mail. Agreement § 4.

In addition, notice will be provided to Settlement Class Members online through the Settlement Website. *Id.*

## IV.   **CONCLUSION**

For all of the foregoing reasons, Plaintiff respectfully requests that the Court: (1) preliminarily approve the proposed Settlement as being within the range of possible final approval; (2) conditionally certify the  Settlement Class and appoint Plaintiff as class representative; (3) appoint his attorneys Keogh Law, Ltd., as Class Counsel; (4) approve the proposed Notice and Claims Program, to be administered by Epiq; (5) direct that Notice be provided to the  Settlement Class pursuant to the terms of the  Agreement; (6) establish a procedure for  Settlement Class Members to object to the  Settlement or exclude themselves from the Class; (7) set a deadline s after the Notice Deadline, after which no one shall be allowed to object to the Settlement, exclude himself or herself from the  Settlement Class, or seek to intervene or submit a Claim; (8) schedule a hearing to consider final approval of the Settlement and set the following schedule as set forth in the draft Preliminary Approval Order; (9) that this Court grant preliminary approval of the Settlement Agreement and the proposed order attached as Exhibit D to the Agreement and again for the Court's convenience as *Exhibit 3* that provides the following schedule:

| | |
|---|---|
| _____<br><br>[30 days after the date of this Order] | Deadline for notice to be provided in accordance with the Agreement and this Order (Notice Deadline) |
| _____<br><br>[30 days after Preliminary Approval | Deadline for filing of Plaintiff's Motion for Attorneys' Fees and Costs and Service Awards |

21

| _____ [90 days after Preliminary Approval] | Deadline to file objections or submit requests for exclusion (Opt-Out and Objection Deadline) |
|---|---|
| _____ [90 days after Preliminary Approval] | Deadline for Settlement Class Members to Submit a Claim Form (Claim Period) |
| _____ [14 days prior to Final Approval Hearing] | Deadline for Parties to file the following: (1) List of persons who made timely and proper requests for exclusion (under seal); (2) Proof of Class Notice; and (3) Motion and memorandum in support of final approval, including responses to any objections. |
| _____ [ NO LESS THAN 150 AND NO MORE THAN 180 DAYS AFTER ENTRY OF THIS PRELIMINARY APPROVAL ORDER ] | Final Approval Hearing |

Respectfully submitted,

s/ Keith J. Keogh
Keith J. Keogh
Amy L. Wells
Keogh Law, Ltd.
55 West Monroe Street,
Suite 3390
Chicago, Illinois 60603
(312) 726-1092
(312) 726-1093 (fax)
Keith@KeoghLaw.com
AWells@KeoghLaw.com

*Attorneys for Plaintiff and the Proposed Class*