**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

**Nicholas M. Martin, on behalf of himself**
**and all other similarly situated,**

|  |  |
|---|---|
| **Plaintiff,** | **Case No.: 16-cv-09483** |
| **vs.** | **Judge John J. Tharp** |
| **Wells Fargo Bank, N.A.** | **Magistrate Judge Sheila M. Finnegan** |
| **Defendant.** |  |

**PLAINTIFF'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES,**
**AND CLASS REPRESENTATIVE SERVICE AWARD**

## TABLE OF CONTENTS

I.      Introduction.................................................................................................. 1

II.      Background and Settlement ........................................................................ 2

         A.     Procedural Background............................................................. 2

         B.     Discovery ................................................................................. 2

         C.     The Parties' Mediation............................................................. 3

         D.     The Settlement ......................................................................... 4

III.     Class Counsel Are Entitled to an Award of Attorneys' Fees from the Common Fund ............................................................................................ 6

IV.     The Proposed Fee Award Is Appropriate and Should Be Approved. ................................. 6

     A.     The Court Should Calculate Fees as a Percentage of the Fund ............................ 6

     B.     Counsel's Request Is Within the Market Rate ...................................... 8

     1.     The Requested Fee Comports with the Contract Between Plaintiff and Counsel. . 9

     2.     The Requested Fee Reflects the Fees Awarded in Other Settlements. ................. 10

       a.     Pre-Pearson *Percentage-of-the-Fund Settlements* ................................. 10

       b.     *Post*-Pearson*: The Pearson Presumption Did Not Alter the Market Rate for Fees* 11

     3.     Other Factors Support the Requested Fee.......................................... 13

       a.     *Risk of Nonpayment* ................................................................ 13

       c.     *Stakes of the Case* ................................................................. 17

V.      The Requested Service Award for Mr. Martin Should Be Approved............................. 18

VI.     CONCLUSION ........................................................................................ 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbott v. Lockheed Martin Corp.*
No. 06-701, 2015 WL 4398475 (N.D. Ill. July 17, 2015) ........................................ 12

*Allen v. JPMorgan Chase Bank, NA*, No. 13-8285 (N.D. Ill. Oct. 21, 2015) ........................ 12, 18

*Am. Copper & Brass, Inc. v. Lake City Indus. Prod., Inc.*
No. 1:09-CV-1162, 2016 WL 6272094 (W.D. Mich. Mar. 1, 2016) ........................................ 19

*Americana Art China, Co. v. Foxfire Printing & Packaging, Inc.*
743 F.3d 243 (7th Cir. 2014) ........................................................................ 6

*Beech Cinema, Inc. v. Twentieth Century Fox Film Corp.*
480 F. Supp. 1195 (S.D.N.Y. 1979) ................................................................ 11

*Benzion v. Vivint, Inc.*, No. 12-61826 (S.D. Fla. Feb. 23, 2015) .................................... 19

Berkey Photo, Inc. v. Eastman Kodak Co., 603 F.2d 263 (2d Cir. 1979) .................................. 16

*Bickel v. Sheriff of Whitley Cnty*
No. 08-102, 2015 WL 1402018 (N.D. Ind. March 26, 2015) ........................................ 12

*Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980) ...................................................... 6

*CE Design Ltd. v. CV's Crab House North, Inc.*, No. 07-5456 (N.D. Ill. Oct. 27, 2011) ............ 10

*CE Design, Ltd. v. Exterior Sys., Inc.*, No. 07-66 (N.D. Ill. Dec. 6, 2007) .......................... 10

*City of Greenville v. Syngenta Corp Prot., Inc.*, 904 F. Supp. 2d 902 (S.D. Ill. 2012) ............... 11

*Cook v. Niedert*, 142 F.3d 1004 (7th Cir. 1998) ...................................................... 18

*Craftwood Lumber Co. v. Interline Brands, Inc.*
No. 11-4462, 2015 WL 1399367 (N.D. Ill. Mar. 23, 2015) ........................................ 7

*Cummings v. Sallie Mae*, 12-9984 (N.D. Ill. May 30, 2014) ............................................ 10

*Desai v. ADT Sec. Servs., Inc.*, No. 11-1925 (N.D. Ill. June 21, 2013) .............................. 10, 19

*Florin v. Nationsbank of Ga., N.A.*, 34 F.3d 560 (7th Cir. 1994) ...................................... 7, 14

*G.M. Sign, Inc. v. Finish Thompson, Inc.*, No. 07-5953 (N.D. Ill. Nov. 1, 2010) ...................... 10

*Gaskill v. Gordon*, 942 F. Supp. 382 (N.D. Ill. 1996) ................................................ 8, 9

*Greene v. Emersons Ltd.*, 1987 WL 11558 (S.D.N.Y. May 20, 1987) ...................................... 11

*Guarisma v. ADCAHB Medical Coverages, Inc., et al.*
1:13-cv-21016 (S.D.FL. June 24, 2015) .......................................................... 13

*Hageman v. AT & T Mobility* LLC
No. CV 13-50-BLG-RWA, 2015 WL 9855925 (D. Mont. Feb. 11, 2015) .............................. 19

*Hanley v. Fifth Third Bank*, No. 12-1612 (N.D. Ill.) .................................................. 10

*Heekin v. Anthem, Inc.*, No. 05-01908, 2012 WL 5878032 (S.D. Ind. Nov. 20, 2012) .................. 19

*Hinman v. M&M Rentals, Inc.*, No. 06-1156 (N.D. Ill. Oct. 6, 2009) .................................... 10

*Hoeflicker v CPC Logistics, Inc. 4:15-cv-00679-BP* (W.D. Mo. January 30, 2017) ...................... 13

*Holtzman v. CCH*, No. 07-7033 (N.D. Ill. Sept. 30, 2009) .............................................. 10

*Ikuseghan v. Multicare Health Sys.*
No. C14-5539 BHS, 2016 WL 4363198 (W.D. Wash. Aug. 16, 2016) ................................ 19

*In re Ampicillin Antitrust Litigation*, 526 F. Supp. 494 (D.D.C. 1981) ................................ 11

*In re Bankcorp. Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002 ............................................ 11

*In re Capital One Tel. Consumer Prot. Act Litig.*
80 F. Supp. 3d 781 (N.D. Ill. 2015) ............................................................ 7, 12, 16

*In re Combustion, Inc.*, 968 F. Supp. 1116 (W.D. La. 1997) ...................................................... 11

*In re Dairy Farmers of Am., Inc.*
MDL No. 2031, 2015 WL 753946 (N.D. Ill. Feb. 20, 2015)....................................................... 12

*In re Ky. Grilled Chicken Coupon Mktg. & Sales Practices Litig.*
280 F.R.D. 364 (N.D. Ill. 2011)............................................................................................ 6, 11

*In re Marsh ERISA Litig.*, 265 F.R.D. 128 (S.D.N.Y. 2010).......................................................... 17

*In re Mego Fin. Corp. Sec. Litigation*, 213 F.3d 454 (9th Cir. 2000).......................................... 11

*In re Synthroid Marketing Litig.*, 325 F.3d 974 (7th Cir. 2003).................................................. 7

*In re Synthroid Mkt. Litig.* 264 F.3d 712 (7th Cir. 2001) ................................................... 9, 16, 18

*In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*
724 F. Supp. 160 (S.D.N.Y. 1989) ............................................................................................ 8

*Johnson v. Yahoo! Inc.*
No. 14 CV 2028, 2018 U.S. Dist. LEXIS 23564 (N.D. Ill. Feb. 13, 2018) ............................. 16

*Kirchoff v. Flynn*, 786 F.2d 320 (7th Cir. 1986) .................................................................... 9, 14

*Kolinek v. Walgreen Co.*, 311 F.R.D. 483 (N.D. Ill. 2015) .................................................. 7, 9, 12

*Landsman & Funk, P.C. v. Skinder-Strauss Assocs.*
No. 08CV3610 CLW, 2015 WL 2383358 (D.N.J. May 18, 2015)........................................... 19

*Lees v. Anthem Ins. Companies Inc.*
No. 4:13CV1411 SNLJ, 2015 WL 3645208 (E.D. Mo. June 10, 2015) .................................. 19

*Legg v Spirit*, 14-cv-61978-JIC (S.D. Fla. Aug. 2, 2016)...................................................... 13

*Legg v. Lab. Corp. of America*, 14-cv-61543 (S.D. Fla. Feb. 18, 2016) ..................................... 13

*Martin v. Dun & Bradstreet, Inc.*, 12-215 (N.D. Ill. Jan. 16, 2014) ...................................... 10

*Martin v. JTH Tax, Inc.*, No. 13-6923 (N.D. Ill. Sept. 16, 2015) ............................................. 12

*Matter of Cont'l Ill. Sec. Litig.*, 962 F.2d 566 (7th Cir. 1992)................................................... 8

*McCue v. MB Fin., Inc.*, No. 15-988, 2015 WL 4522564 (N.D. Ill. July 23, 2015).................... 12

*Muransky v Godiva*, 15-cv-60716-WPD (S.D. Fla. Sept. 28, 2016) ........................................ 13

*Ossola v American Express*, 13-cv-04836 (N.D. Il. December 2, 2016)...................................... 12

*Paldo Sign & Display Co. v. Topsail Sportswear, Inc.*
No. 08-5959 (N.D. Ill. Dec. 21, 2011) .................................................................................... 10

*Pearson v. NBTY, Inc.*, 772 F.3d 778 (7th Cir. 2014)................................................................... 8

*Prena v. BMO Fin. Corp.*, No. 15-09175, 2015 WL 2344949 (N.D. Ill. May 15, 2015)............. 12

*Retsky Family Ltd. P'ship v. Price Waterhouse, LLP*, Case No. 97-7694, 2001 WL 1568856
(N.D. Ill. Dec. 10, 2001) ............................................................................................................ 9

*Safeco Insurance Co. v. Burr*, 551 U.S. 47 (2007) ............................................................. 14, 15

*Saf-T-Gard Int'l, Inc. v. Seiko Corp. of Am.*, No. 09-776 (N.D. Ill. Jan. 14, 2011) .................... 10

*Silverman v. Motorola Solutions, Inc.*, 739 F.3d 956 (7th Cir. 2013) ................................... 8, 13

*Spano v. The Boeing Co.*, No. 06-743, 2016 WL 3791123 (S.D.Ill. March 31, 2016)................ 12

*Speer v. Whole Food Mkt. Group, Inc.*
No. 14-cv-3035, 2015 U.S. Dist. LEXIS 40462 (M.D. Fla. Mar. 30, 2015) ........................... 15

*Stumpf v. PYOD*, 12-4688, 2013 WL 6123156 (N.D. Ill. Nov. 20, 2013)................................... 10

*Sutton v. Bernard*, 504 F.3d 688, 691 (7th Cir. 2007) ................................................... 6, 13, 14, 16

*Taubenfeld v. AON Corp.*, 415 F.3d 597 (7th Cir. 2005) ...................................................... 9, 10

*Van Gemert v. Boeing Co.*, 516 F. Supp. 412 (S.D.N.Y. 1981) .............................................. 11

*Van Straaten v. Shell Oil Prods. Co. LLC*, 678 F.3d 486 (7th Cir. 2012) .................................. 15

*Vergara v. Uber Technologies, Inc.*, 15-cv-6942 (N.D. Ill.)(February 26, 2018) ........................ 12

*West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710 (S.D.N.Y. 1970)................................... 15

West Virginia v. Chas. Pfizer & Co., 440 F.2d 1079 (2d Cir. 1971)............................................. 16
*Will v. Gen. Dynamics Corp.*
    Civil No. 06-698-GPM, 2010 WL 4818174 (S.D. Ill. Nov. 22, 2010).............................. 11, 19
*Zolkos v. Scriptfleet, Inc.*, No. 12-8230, 2015 WL 4275540 (N.D. Ill. July 13, 2015) ............... 12

## I.    **Introduction.**

On January 22, 2018, this Court preliminarily approved a proposed class action settlement between Plaintiff Martin ("Plaintiff" or "Martin") and Defendant Wells Fargo Bank, N.A. ("Wells Fargo"). ECF 105.  This Settlement creates a $2,500,000, non-reversionary common fund for the benefit of nearly 109,000 borrowers with a Wells Fargo mortgage account that was not excluded from one or more of the quarterly account reviews undertaken in the Relevant Time Period[1] and where such mortgage account had a balance of $0.00 at the time of such quarterly account review. Class Counsel zealously prosecuted the class' claims for over two and half years, achieving the Settlement only after discovery, contested motion practice, and a full day in-person mediation session on October 5, 2017 in Washington, DC with Jonathan Marks of MarksADR.

As compensation for the substantial benefit conferred upon the Settlement Class, Class Counsel respectfully move the Court for an award of attorneys' fees of $833,325.00, which represents one-third of the total settlement fund or 35.13% of the fund after deducting administration costs and any service award, plus reimbursement of $14,277.64 of counsel's out-of-pocket costs[2]. This request should be approved because (1) it represents the market rate for this type of settlement, (2) it is in line with the Seventh Circuit's directive in *Pearson*, and (3) it is a reasonable and appropriate amount given the substantial risks in prosecuting this action, the quality and extent of Class Counsel's work, and the stakes of the case. Class Counsel also respectfully move the Court for a service award of $10,000 to Plaintiff Martin for his work and success on behalf of the Class. Such awards are common and proper.

---

[1] The "Relevant Time Period" refers to the second, third, and fourth quarters of 2015 and the first, second, and third quarters of 2016 inclusive.

[2] The expenses exclude any internal costs such as copying costs, legal research or telephone costs as well as excludes any food costs while traveling for this case. *Keogh Decl.* at ¶ 21.

The long form notice and the FAQs on the settlement website both specifically informed the class of the exact amount sought for fees as both a percentage and the actual dollar amount, as well as that Plaintiff would be seeking $10,000 as an service award. https://www.martinvwellsfargosettlement.com/Content/Documents/Notice.pdf (last visited March 6, 2018). Although the time to object to the Settlement has not expired, as of filing this motion, no class member has objected to the fees or service award sought.

## II.   Background and Settlement

### A.   Procedural Background

On October 4, 2016, Plaintiff filed a complaint in the United States District Court for the Northern District of Illinois alleging that Wells Fargo negligently and willfully violated Fair Credit Reporting Act ("FCRA") by obtaining Plaintiff's credit report from a in March and June 2016, at which times Plaintiff's Wells Fargo mortgage loan account had a principal balance of zero. See Dkt. No. 1. Plaintiff asserted his claims on behalf of a putative nationwide class of consumers whose consumer reports Wells Fargo obtained "where the consumer did not have an existing account relationship during the applicable statute of limitations period." See id.

Wells Fargo filed an answer to the Complaint on November 21, 2016, in which it denied that it violated FCRA and asserted various affirmative defenses. See Dkt. No. 17.

### B.   Discovery

Between November 2016 and July 2017, the Parties engaged in substantial discovery as to the claims and defenses asserted, and related motion practice. See Dkt. Nos. 21, 52, 62 and 73 and *Exhibit 1* (Declaration of Keith J. Keogh) at ¶7. This included Plaintiff filing two motions to compel, and responding to a motion for protective order.

On March 15, 2017, the Court "denied in part as moot, granted in part and entered and continued in part," Plaintiff's first motion to compel and directed the Parties "to proceed with

initial discovery in the manner described on the record." See Dkt. No. 44. In so ruling, the Court instituted phased discovery, and directed Plaintiff to limit his discovery requests within the scope of the Court's phasing order. See Dkt. 44 (Tr. of March 15, 2017 Hearing). On April 12, 2017, the Court "denied without prejudice" those portions of the motion to compel that the Court had taken under advisement, and directed the Parties "to proceed with phased discovery as described in open court." See Dkt. No. 52.

On April 26, 2017, Plaintiff filed an objection to those aspects of the order denying his motion to compel discovery and, on May 3, 2017, the District Court overruled Plaintiff's objection without prejudice as premature. See Dkt. No. 60.

On June 8, 2017, the Court denied Plaintiff's second motion to compel without prejudice "… based on Defendant's representation that it has conducted a reasonable search for materials responsive to discovery requests as narrowed by the Court during Phase 1 and that it has produced all responsive and non−privileged documents." Dkt. No. 72.

On June 15, 2017, pursuant to the Court's order, Wells Fargo produced a privilege log with respect to certain internal communications that were allegedly protected from disclosure under the attorney-client privilege and the work product doctrine.

On July 17, 2017, Wells Fargo filed a motion for protective order with respect to the deposition topics that Plaintiff identified in his notice to take Wells Fargo's deposition pursuant to Fed. R. Civ. P. 30(b)(6). See Dkt. No. 77.On July 20, 2017, the Court allowed Wells Fargo's motion for protective order and took under advisement Wells Fargo's request for attorneys' fees in connection with that motion. See Dkt. No. 82.

### C.    <u>The Parties' Mediation</u>

After the July 20, 2017 hearing, the Parties agreed to participate in private mediation. See *Exhibit 1* (Declaration of Keith J. Keogh) at ¶13. The parties scheduled a one-day, in-person

mediation session for October 5, 2017 in Washington, DC with Jonathan Marks of MarksADR[3].
Id. In advance of the mediation session, the Parties exchanged detailed mediation statements and
conducted multiple telephonic sessions with Mr. Marks[4].

At the conclusion of the October 5, 2017 mediation session, the Parties reached an
agreement in principal to settle Plaintiff's claims on a class-wide basis. At all times, the settlement
negotiations were highly adversarial, non-collusive, and at arm's length[5]. Class Counsel then
spent substantial time negotiating and drafting the terms of the settlement agreement and class
notice, and drafting the preliminary approval motion and proposed preliminary approval order.

**D.    The Settlement**

The Settlement Class is defined as follows:

> Any borrower with a Wells Fargo mortgage account that was not excluded from
> one or more of the quarterly account reviews undertaken in the Relevant Time
> Period (the "Quarterly Account Reviews") and where such mortgage account had
> a balance of $0.00 at the time of such Quarterly Account Review.

Agreement § 1.29.

There are 77,656 such accounts, some borrowers, for a total of 109,747 borrowers, each of
whom was sent notice of the settlement and is entitled to submit a claim form to receive payment
from the Settlement Fund. *Id.* at ¶2.2 and ¶2.3. The Settlement Class excludes (a) any judge
presiding over this case and their immediate families; (b) Wells Fargo, Wells Fargo's subsidiaries,
parents, successors, predecessors, and any entity in which Wells Fargo or its parents have a

---

[3] Mr. Marks has been a full-time mediator and arbitrator since 1981, when he co-founded Endispute, the United States' first full-service ADR firm. From 1994, he was Vice-Chairman of JAMS-Endispute. For the past decade, Mr. Marks has served as mediator/arbitrator with MARKSADR, LLC. In his 31 years as a full-time mediator and arbitrator, he has handled more than 1,500 major disputes, many of which were high profile litigation matters, including the lengthy mediation involving Microsoft, the Department of Justice and a number of states. http://www.nadn.org/jonathan-marks   Last visited December 4, 2017.

[4] *Exhibit 1* Keogh Decl., ¶ 13

[5] *Id.* at ¶15

controlling interest and their current or former officers, directors, agents, attorneys and employees; and (c) counsel for all Parties and their families.  *Id.*  Persons within the Settlement Class may opt out of the Settlement and thus not become Settlement Class Members.  *Id.* §§ 5.5-5.8.

The Settlement is completely non-reversionary—all unclaimed or undistributed amounts remaining in the Settlement Fund after all payments under the Settlement Agreement will, to the extent administratively feasible, be redistributed to the Settlement Class or, if not administratively feasible, to a Court-approved *cy pres* recipient. While it is not possible to predict the precise amount of each *pro rata* payment until all claims have been submitted, Class Counsel, based on their experience in similar class actions, estimate awards of Class Counsel, based on their experience in similar class actions, estimate each Settlement Class Member who files a timely claim will receive between $137 to $275, assuming a claim rate range of five to ten percent after deductions for court-approved attorneys' fees and costs, any court-approved service award to the Plaintiff, and the costs of notice and claims administration[6].

In order to exercise the right to obtain the relief outlined above, Settlement Class Members need only complete a simple, one-page claim form and provide it to the Settlement Administrator via the Settlement Website or by mail. *Id.* § 4.3.  This is a terrific outcome considering the FCRA only provides a recovery of $100-$1,000, and then only if the plaintiff can meet his substantial burden of proving that the violation was willful.

Plaintiff respectfully requests that the Court approve attorneys' fees of $833,325.00 which represents one-third of the total settlement fund, plus reimbursement of $14,277.64 of counsel's out-of-pocket costs, and a $10,000 service award for Plaintiff Martin. As explained below, the

---

[6] The claims administrator has agreed to cap administration costs at $137,928 barring unforeseen changes in the administration.

requested fee award is in line with the market rate for similar attorney services in this jurisdiction, and fairly reflects the excellent result achieved. Similarly, the requested service award is comparable to other consumer class actions, and should be approved.

**III.** **Class Counsel Are Entitled to an Award of Attorneys' Fees from the Common Fund**

The Supreme Court and Seventh Circuit have long recognized that when counsel's efforts result in the creation of a common fund that benefits plaintiffs and unnamed class members, counsel have a right to be compensated from that fund for their successful efforts in creating it. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("lawyer who recovers a common fund … is entitled to a reasonable attorneys' fee from the fund as a whole"); *Sutton v. Bernard*, 504 F.3d 688, 691 (7th Cir. 2007) ("the attorneys for the class petition the court for compensation from the settlement or common fund created for the class's benefit"). The Settlement that Class Counsel achieved creates a $2,500,000 fund for the class's benefit. Accordingly, Class Counsel are entitled to an award of reasonable fees from the fund.

**IV.** **The Proposed Fee Award Is Appropriate and Should Be Approved.**

    **A.** **The Court Should Calculate Fees as a Percentage of the Fund**

In common fund cases, courts have discretion to use one of two methods to determine whether a fee request is reasonable: (1) percentage of the fund; or (2) lodestar. *Americana Art China, Co. v. Foxfire Printing & Packaging, Inc.*, 743 F.3d 243, 247 (7th Cir. 2014). Plaintiff submits that the percentage of the fund approach should be used to determine fees in this case, for several reasons.

First, "the approach favored in the Seventh Circuit is to compute attorney's fees as a percentage of the benefit conferred upon the class." *In re Ky. Grilled Chicken Coupon Mktg. & Sales Practices Litig.*, 280 F.R.D. 364, 379 (N.D. Ill. 2011). Courts look to *In re Synthroid*

*Marketing Litig.* ("*Synthroid II*"), 325 F.3d 974, 980 (7th Cir. 2003), to assist in determining fees, and have nearly uniformly held that the percentage of the fund reflects the "market rate" for consumer class actions because "given the opportunity … class members and Plaintiff's counsel would have bargained for" such. *Craftwood Lumber Co. v. Interline Brands, Inc.*, No. 11-4462, 2015 WL 1399367, at *5 (N.D. Ill. Mar. 23, 2015); *In re Capital One Tel. Consumer Prot. Act Litig.* ("*In re Capital One*"), 80 F. Supp. 3d 781, 795 (N.D. Ill. 2015) (percentage of the fund method is "more likely to yield an accurate approximation of the market rate" in consumer class case (TCPA), and that, "had an arm's length negotiation been feasible, the court believes that the class would have negotiated a fee arrangement based on a percentage of the recovery, consistent with the normal practice in consumer class actions").

Second, the percentage-of-the-fund method has several advantages over lodestar. One such advantage, and a substantial reason why percentage method more accurately represents the "market rate," is that "the lodestar method [would] require plaintiffs to monitor counsel and ensure that counsel are working efficiently on an hourly basis, something a class of nine million lightly-injured plaintiffs likely would not be interested in doing." *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 501 (N.D. Ill. 2015).

Another advantage "to utilizing the percentage method in common fund cases [is] its relative simplicity of administration." *Florin v. Nationsbank of Ga., N.A.*, 34 F.3d 560, 566 (7th Cir. 1994) (bracketed redaction added). As one seminal case found:

> The percentage method is bereft of largely judgmental and time-wasting computations of lodestars and multipliers. These latter computations, no matter how conscientious, often seem to take on the character of so much Mumbo Jumbo. They do not guarantee a more fair result or a more expeditious disposition of litigation.

*In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 724 F. Supp. 160, 170 (S.D.N.Y. 1989); *see also Matter of Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 573 (7th Cir. 1992) (noting it is easier to establish market based contingency fee percentages than to "hassle over every item or category of hours and expense and what multiple to fix and so forth"); *Gaskill v. Gordon*, 942 F. Supp. 382, 386 (N.D. Ill. 1996) (percentage of fund method "provides a more effective way of determining whether the hours expended were reasonable."), *aff'd*, 160 F.3d 361 (7th Cir. 1998). Accordingly, the percentage method should be used to evaluate the proposed fee award here.

### B.  Counsel's Request Is Within the Market Rate

The Seventh Circuit holds that "attorneys' fees in class actions should approximate the market rate that prevails between willing buyers and willing sellers of legal services." *Silverman v. Motorola Solutions, Inc.*, 739 F.3d 956, 957 (7th Cir. 2013). Further, there is a "presumption" that fees in any given settlement should not "exceed a third or at most a *half* of the total amount of money going to class members and their counsel." *Pearson v. NBTY, Inc.*, 772 F.3d 778, 782 (7th Cir. 2014) (emphasis added). Although *Pearson* also requires that the value of the settlement be evaluated exclusive of administrative costs, it does not purport to alter the "market rate" analysis or lower the market rate for attorneys' fees in consumer class actions.

Here, Plaintiff's fee request squarely falls within *Pearson*'s parameters. Plaintiff seeks fees in the amount of $833,325.00, which represents one-third of the total $2,500,000 settlement fund, or 35.13% of the fund remaining after subtracting the notice and administration costs using the $137,928 cap[7] the class administrator agreed to, and the requested $10,000 service award.

---

[7] If the administration costs do not reach the cap, the percentage of fees sought net administration will be lower. Class Counsel has chosen to use the cap amount in calculating percentages instead of the estimated costs to illustrate the highest percentage net administration costs and service award.

Plaintiff's fee request is also consistent with the various "benchmarks" the Seventh Circuit has elucidated to assist courts in estimating the market rate, including "the fee contract between the plaintiff and counsel, data from similar cases, and information from class-counsel auctions," *Kolinek*, 311 F.R.D. at 501 (citing *In re Synthroid Mkt. Litig.* ("*Synthroid I*"), 264 F.3d 712, 719 (7th Cir. 2001)). These and other relevant factors identified by the Seventh Circuit, including the risk counsel undertook in accepting the case, the quality of performance and the stakes of the case (*Synthroid I*, 264 F.3d at 721), further demonstrate that Plaintiff's fee request should be approved..

1. The Requested Fee Comports with the Contract Between Plaintiff and Counsel.

The requested fee award is not only supported by *Pearson*, but it is also in line with representation agreements commonly entered into in this District, including the one between Plaintiff and his counsel. *See Taubenfeld v. AON Corp.*, 415 F.3d 597, 599 (7th Cir. 2005) (courts may examine "actual fee contracts that were negotiated for private litigation.").

The customary contingency agreement in this Circuit is 33% to 40% of the total recovery. *Gaskill v. Gordon*, 160 F.3d 361, 362–63 (7th Cir. 1998) (noting that typical contingency fees are between 33% and 40% and affirming award of 38%); *Kirchoff v. Flynn*, 786 F.2d 320, 323 (7th Cir. 1986) (observing that "40% is the customary fee in tort litigation" and noting, with approval, contract providing for one-third contingent fee if litigation settled prior to trial); *Retsky Family Ltd. P'ship v. Price Waterhouse, LLP*, Case No. 97-7694, 2001 WL 1568856, at *4 (N.D. Ill. Dec. 10, 2001) (recognizing that a customary contingent fee is "between 33 1/3% and 40%" and awarding counsel one-third of the common fund).

Consistent with the foregoing, Plaintiff's retainer agreement with Class Counsel reflects a fee of one third the total class recovery. *Exhibit 1* at ¶20**.** Accordingly, this further supports the reasonableness of the proposed award. *See Stumpf v. PYOD*, 12-4688, 2013 WL 6123156, at *2

(N.D. Ill. Nov. 20, 2013) ("The named plaintiff's agreement to a floor of 33.33% of any net recovery supports the claim that 30% of the net recovery is tied to the market.")

      2.    <u>The Requested Fee Reflects the Fees Awarded in Other Settlements.</u>

      *a. Pre-*Pearson *Percentage-of-the-Fund Settlements*

Awards of one-third of the entire settlement fund were commonplace before *Pearson*. Some consumer class cases where this happened are as follows: *Taubenfeld*, 415 F.3d at 600 (7th Cir. 2005) (noting counsel had submitted a table of thirteen cases in the Northern District of Illinois where counsel was awarded fees amounting to 30–39% of the settlement fund); *Martin v. Dun & Bradstreet, Inc.*, 12-215 (N.D. Ill. Jan. 16, 2014) (Dkt. No. 63) (one-third of total payout); *Hanley v. Fifth Third Bank*, No. 12-1612 (N.D. Ill.) (Dkt. No. 87) (awarding attorneys' fees of one-third of total settlement fund); *Cummings v. Sallie Mae*, 12-9984 (N.D. Ill. May 30, 2014) (Dkt. No. 91) (one-third of common fund); *Desai v. ADT Sec. Servs., Inc.*, No. 11-1925 (N.D. Ill. June 21, 2013) (Dkt. No. 243) (one-third of the settlement fund); *Paldo Sign & Display Co. v. Topsail Sportswear, Inc.*, No. 08-5959 (N.D. Ill. Dec. 21, 2011) (Dkt. No. 116) (fees equal to one-third of the settlement fund plus expenses); *CE Design Ltd. v. CV's Crab House North, Inc.*, No. 07-5456 (N.D. Ill. Oct. 27, 2011) (Dkt. No. 424) (fees equal to one-third of settlement plus expenses); *Saf-T-Gard Int'l, Inc. v. Seiko Corp. of Am.*, No. 09-776 (N.D. Ill. Jan. 14, 2011) (Dkt. No. 100) (fees and expenses equal to 33% of the settlement fund); *G.M. Sign, Inc. v. Finish Thompson, Inc.*, No. 07-5953 (N.D. Ill. Nov. 1, 2010) (Dkt. No. 146) (fees of one-third of settlement plus expenses); *Hinman v. M&M Rentals, Inc.*, No. 06-1156 (N.D. Ill. Oct. 6, 2009) (Dkt. No. 225) (fees and expenses equal to 33% of the fund); *Holtzman v. CCH*, No. 07-7033 (N.D. Ill. Sept. 30, 2009) (Dkt. No. 33) (same); *CE Design, Ltd. v. Exterior Sys., Inc.*, No. 07-66 (N.D. Ill. Dec. 6, 2007) (Dkt. No. 39) (same).

Additional cases approving a fee award equal to one-third of the entire fund include: *In re Ky. Grilled Chicken*, 280 F.R.D. at 380–81 (citing cases, and describing a fee of 32.7% of the common fund as "well within the market rate and facially reasonable"); *City of Greenville v. Syngenta Corp Prot., Inc.*, 904 F. Supp. 2d 902, 908–09 (S.D. Ill. 2012) (approving a one-third fee because a "contingent fee of one-third of any recovery after the reimbursement of costs and expenses reflects the market price" and citing cases); *Will v. Gen. Dynamics Corp.*, Civil No. 06-698-GPM, 2010 WL 4818174, *3 (S.D. Ill. Nov. 22, 2010) (finding "the market rate for complex plaintiffs' attorney work in this case and similar cases is a contingency fee" and agreeing "a one-third fee is consistent with the market rate"); *In re Bankcorp. Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002) (affirming award of 36% of the settlement fund); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 460 (9th Cir. 2000) (affirming award of attorneys' fees equal to 33.33% of the total recovery); *Greene v. Emersons Ltd.*, No. 76 Civ. 2178 (CSH), 1987 WL 11558, *8 (S.D.N.Y. May 20, 1987) (awarding attorneys' fees and expenses in excess of 46% of the settlement fund); *In re Combustion, Inc.*, 968 F. Supp. 1116, 1131–32 (W.D. La. 1997) (awarding attorneys' fees equal to 36% of the common fund); *In re Ampicillin Antitrust Litig.*, 526 F. Supp. 494, 503 (D.D.C. 1981) (awarding attorneys' fees in excess of 40% of the settlement fund); *Beech Cinema, Inc. v. Twentieth Century Fox Film Corp.*, 480 F. Supp. 1195, 1198–99 (S.D.N.Y. 1979) (awarding fees in excess of 50% of the settlement fund); *Van Gemert v. Boeing Co.*, 516 F. Supp. 412, 420 (S.D.N.Y. 1981) (awarding fees of 36% of fund).

   b. *Post-*Pearson*: The Pearson Presumption Did Not Alter the Market Rate for Fees*

The reasonableness of the proposed award, which amounts to 35.13% of the fund after deducting administration costs and any service award, which is 33% of the total fund, represents

the post-*Pearson* market price, and is therefore reasonable. This rate is well within the market rate

as demonstrated by numerous fee awards approved in this District since *Pearson*:

- 36% of total fund: *In re Capital One*, 80 F. Supp. 3d 781 (N.D. Ill. 2015) (36% of the first $10 million of the settlement) (Holderman, J.).

- 38% of total fund: *Martin v. JTH Tax, Inc.*, No. 13-6923 (N.D. Ill. Sept. 16, 2015), transcript of proceedings, Exhibit 2 (Shah, J.).

- 36% of the fund minus notice/admin costs: *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 501 (N.D. Ill. 2015) (Kennelly, J.).

- 33% of fund not including notice/admin costs: *Allen v. JPMorgan Chase Bank, NA*, No. 13-8285 (N.D. Ill. Oct. 21, 2015) (Dkt. No. 93 at 6) (Pallmeyer, J.).

- 33% of total fund or 35.4% of the fund after notice costs. *Ossola v American Express*, 13-cv-04836 (N.D. Il. December 2, 2016) (Dkt. 379 at 5)(Lee, J.)

  36% of the first $10 million band of a $20,000,000 common fund settlement. *Vergara v. Uber Technologies, Inc.*, 15-cv-6942 (N.D. Ill.)(February 26, 2018), the court overruled an objection to the plaintiff's motion for approval of attorney's fees in a class action brought under the Telephone Consumer Protection Act.

Other cases in this Circuit are likewise in accord. *See McCue v. MB Fin., Inc.*, No. 15-988,

2015 WL 4522564 (N.D. Ill. July 23, 2015) (awarding 33.33% of the fund plus costs); *Abbott v.*

*Lockheed Martin Corp.*, No. 06-701, 2015 WL 4398475 (N.D. Ill. July 17, 2015) (awarding

33.33% of the fund plus costs); *Zolkos v. Scriptfleet, Inc.*, No. 12-8230, 2015 WL 4275540 (N.D.

Ill. July 13, 2015) (awarding 33.33% of the fund plus expenses); *Prena v. BMO Fin. Corp.*, No.

15-09175, 2015 WL 2344949 (N.D. Ill. May 15, 2015) (awarding 33.5% of the fund after

deducting notice costs); *Bickel v. Sheriff of Whitley Cnty*, No. 08-102, 2015 WL 1402018 (N.D.

Ind. March 26, 2015) (awarding 43.7% of the fund); *In re Dairy Farmers of Am., Inc.*, MDL No.

2031, 2015 WL 753946 (N.D. Ill. Feb. 20, 2015) (awarding 33.33% of the fund); *Spano v. The*

*Boeing Co.*, No. 06-743, 2016 WL 3791123 (S.D.Ill. March 31, 2016) (awarding 33 1/3% of the

monetary settlement). Consequently, the requested fee award falls in line with numerous other

settlements approved as reasonable in this Circuit.

The proposed award is also consistent with other FCRA class actions outside the Seventh Circuit. *See Legg v. Lab. Corp. of America*, 14-cv-61543, ECF No. 218, pp. 4-5 (S.D. Fla. Feb. 18, 2016) (FCRA case pursuant to the FACTA subsection awarding one-third of gross recovery for fees plus expenses); *Legg v Spirit*, 14-cv-61978-JIC, ECF No. 151, ¶14(g) and ¶15 (S.D. Fla. Aug. 2, 2016) (same); *Muransky v Godiva*, 15-cv-60716-WPD, ECF No. 99, ¶12(j) and ¶14 (S.D. Fla. Sept. 28, 2016) (same, on appeal by professional objector); *Guarisma v. ADCAHB Medical Coverages, Inc., et al.*, 13-cv-21016, ECF No. 95 (S.D. Fla. June 24, 2015) (awarding one third of the fund, plus costs); *Hoeflicker v CPC Logistics, Inc. 4:15-cv-00679-BP* (W.D. Mo. January 30, 2017) (awarding one third of gross settlement plus expenses in FCRA background report case)(ECF 53).

      3.    <u>Other Factors Support the Requested Fee.</u>

Beyond comparisons to similar fee awards and agreements, the market price for legal fees also "depends in part on the risk of nonpayment a firm agrees to bear, in part on the quality of its performance, in part on the amount of work necessary to resolve the litigation, and in part on the stakes of the case." *Sutton*, 504 F.3d at 693 (quotation and internal marks omitted). Given the outstanding result achieved for the benefit of the Settlement Class in this case, considering the risk of nonpayment to Class Counsel, and extensive resources expended over the years this litigation has been pending, Plaintiff respectfully submits that these additional factors support the proposed fee award in full.

      a.    *Risk of Nonpayment*

"Contingent fees compensate lawyers for the risk of nonpayment. The greater the risk of walking away empty-handed, the higher the award must be to attract competent and energetic counsel." *Silverman v. Motorola Solutions, Inc.*, 739 F.3d 956, 958 (7th Cir. 2013) (citing *Kirchoff*

*v. Flynn*, 786 F.2d 320 (7th Cir. 1986)). Thus, the risk of non-payment is a key consideration in assessing the reasonableness of a requested fee, and must be incorporated into any ultimate fee award. *See Florin*, 34 F.3d at 565 ("[A] risk multiplier is not merely available in a common fund case but mandated, if the court finds that counsel had no sure source of compensation for their services.... [T]he need for such an adjustment is particularly acute in class action suits. The lawyers for the class receive no fee if the suit fails, so their entitlement to fees is inescapably contingent.") (quotations and citations omitted); *Sutton*, 504 F.3d at 694 (finding abuse of discretion where court refused to account for the risk of loss on basis that "class actions rarely go to trial and that they all settle[,]" noting that "there is generally some degree of risk that attorneys will receive no fee (or at least not the fee that reflects their efforts) when representing a class because their fee is linked to the success of the suit[;] ... [b]ecause the district court failed to provide for the risk of loss, the possibility exists that Counsel … was undercompensated").

Here, Class Counsel faced substantial risk of non-payment. Their entire fee is contingent on the outcome, which was far from guaranteed, and could have been zero. As set forth in the motion for preliminary approval, this action involves sharply opposing positions on many issues, and difficulties in proof. For example, the parties disagreed whether there was even a violation of the FCRA and, even in that event, the parties sharply disagreed as to whether Plaintiff could prove the violation was "willful," as he must to recover statutory and punitive damages under the FCRA. *See* 15 U.S.C. §1681n; *Safeco Insurance Co. v. Burr,* 551 U.S. 47 (2007).

Wells Fargo contends its access or use of Plaintiff's and the class members' credit reports was not willful because it was allegedly the result of a computer scripting error, and that the FCRA provision at issue was unclear and arguably allowed Wells Fargo's conduct, which was not clearly prohibited by the statutory text, federal regulation, or a binding court of appeal decision.  *See*

*Safeco Ins. Co.*, 551 U.S. at 67-70 (finding violation not willful when the conduct is supported by a reasonable, though erroneous, interpretation of the FCRA); *Van Straaten v. Shell Oil Prods. Co. LLC*, 678 F.3d 486, 490-91 (7th Cir. 2012). However, Plaintiff contends an express prohibition is not needed to show because the conduct at issue was objectively unreasonable given what the statute does require, which is an existing permissible purpose to pull someone's credit, and *Safeco* holds that a violation of the FCRA is "willful" if it is reckless. *Safeco Ins. Co.*, 551 U.S. at 47; *see also Speer v. Whole Food Mkt. Group, Inc.*, No. 14-cv-3035, 2015 U.S. Dist. LEXIS 40462 at *9 (M.D. Fla. Mar. 30, 2015) (willfulness covers both "reckless violations as well as knowing violations of the FCRA."), *citing Safeco*, 551 U.S. at 57-58. The ultimate outcome of these opposing viewpoints and their application to the facts cannot be predicted with any certainty.

The parties also disagree as to whether a class can be certified. Class Counsel agreed to pursue this action on a contingent-fee basis without the benefit of discovery regarding the size or ascertainability of the proposed class. These unknowns further support the requested award.

Counsel also faced potential defeat at every stage of the case, with each ruling holding the potential to derail the case and result in no compensation despite investing the time, money, and resources necessary to adequately prosecute the class claims. These include any major adverse discovery ruling, denial of class certification, summary judgment grant, adverse trial verdict, or defeat on appeal. *See In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 792 F. Supp. 2d 1028, 1035–35 (N.D. Ill. 2011) (finding class counsel incurred significant risk of nonpayment where, among other reasons, class counsel would have to overcome case dispositive defenses and certify a class); And, even if Plaintiff did prevail at trial, any judgment could be reversed on appeal. *See West Virginia v. Chas. Pfizer & Co.,* 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970) ("It is known from past experience that no matter how confident one may be of the outcome of litigation, such

confidence is often misplaced."), *aff'd*, 440 F.2d 1079 (2d Cir. 1971); *see also Berkey Photo, Inc. v. Eastman Kodak Co.,* 603 F.2d 263 (2d Cir. 1979) (reversing $87 million judgment after trial). There is also a risk that a certified class can be decertified as illustrated by *Johnson v. Yahoo! Inc.*, No. 14 CV 2028, 2018 U.S. Dist. LEXIS 23564, at *2 (N.D. Ill. Feb. 13, 2018) where that court decertified a class based on individual issues after notice was sent by class counsel to over 360,000 class members where plaintiffs' counsels are responsible for the notice costs.

Finally, the numerous and substantial risks Class Counsel faced may not be discounted by counsel's ultimate success. Instead, the Court must "estimate the terms of the contract that private plaintiffs would have negotiated with their lawyers, had bargaining occurred at the outset of the case (that is, when the risk of loss still existed)." *Synthroid I*, 264 F.3d at 718. That is so because "[t]he best time to determine this rate is the beginning of the case, not the end (when hindsight alters of the perception of the suit's riskiness, and sunk costs make it impossible for the lawyers to walk away if the fee is too low). This is what happens in actual markets." *Id.* Thus, because this case was filed on in October 2016, the Court must look at the risks Class Counsel faced on that date, pre-discovery. In sum, the considerable risk undertaken by Class Counsel in prosecuting this action on a purely contingent fee basis further supports the requested fee award. *See In re Capital One*, 80 F. Supp. 3d at 805 (awarding 6% risk premium on top of 30% in class settlement).

> b.     *Quality of Performance and Work Invested*

The quality of Class Counsel's performance and time invested in fighting through the contested motion practice, discovery, and adversarial negotiations to achieve a $2,500,000, non-reversionary settlement fund for the benefit of the Settlement Class further supports the requested fee award. *Sutton*, 504 F.3d at 693. In addition to accepting considerable risk in litigating this action, Class Counsel committed their time and resources to this case without any guarantee of

compensation, whatsoever, only achieving the Settlement after over a year of litigation. Class Counsel successfully overcame numerous hurdles, from adversarial motion practice to contentious first party discovery requiring multiple motions to compel. *See* Dkt. Nos. 21, 44, 52, 62 and 73.

In addition to their substantial litigation efforts, Class Counsel devoted numerous hours to negotiating the settlement, which included preparing plaintiff's mediation submission, attending the mediation in Washington D.C. (Keogh Decl. ¶7 - ¶13) Class Counsel also has spent substantial time preparing the settlement papers and notice documents, working with the independent notice provider, responding to class member inquires in response to the notice, and drafting the motion for preliminary approval. And Class Counsel will spend additional time drafting the motion for final approval, dealing with class members to address questions about their claims, and supervising the administration of the settlement.

Class Counsel are experienced in consumer and class action litigation, including under the FCRA. (Keogh Decl. ¶22-¶50). Moreover, because they were proceeding on a contingent fee basis, Class Counsel "had a strong incentive to keep expenses at a reasonable level[.]" *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 150 (S.D.N.Y. 2010)). Given the outstanding $2,500,000 settlement obtained for the class, Class Counsel respectfully submit that their experience and the quality and amount of work invested in this action for the benefit of the class further supports the requested fee award.

        c.    *Stakes of the Case*

The stakes of the case further support the requested fee award. This case involves 109,747 Settlement Class Members whose credit report was obtained by Wells Fargo after their Wells Fargo loan had a zero balance. The statutory damages each Settlement Class Member could individually hope to recover if the case was successfully litigated all the way through trial and any

appeal is low (between $100 and $1,000), and thus individuals are unlikely to file individual lawsuits, especially as here each class member would have to prove willfulness. A class action is realistically the only way most class members could receive any relief. The number of Settlement Class Members and the fact that they likely would not have received any relief without Class Counsel's efforts further support the requested fee award, which should be granted.

## V.    The Requested Service Award for Mr. Martin Should Be Approved.

Class Counsel also respectfully request that the Court grant a service award of $10,000 to Plaintiff for his efforts on behalf of the class. Service awards compensating named plaintiffs for work done on behalf of the class are routinely awarded to encourage individual plaintiffs to undertake the responsibility of representative lawsuits. *See Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) (recognizing that "because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit"); *Synthroid I*, 264 F.3d at 722 ("Incentive awards are justified when necessary to induce individuals to become named representatives.").

In addition to agreeing to champion the class members' claims and subject himself to the additional scrutiny to which defendants typically subject class representatives to evaluate their adequacy, Plaintiff answered discovery and fully participated in this litigation. Mr. Martin also worked with Class Counsel to investigate the case, stayed abreast of the proceedings through litigation and settlement, and reviewed and approved the proposed settlement. (Keogh Decl. ¶ 14.)

Moreover, the amount requested here, $10,000, reasonable in comparison to the $2.5 million settlement amount, and comparable to or less than other awards approved by federal courts in Illinois and elsewhere. *See, e.g., Allen v. JPMorgan Chase Bank, NA*, No. 13-8285 (N.D. Ill.

Oct. 21, 2015) (Dkt. No. 93 at 6) (Approving $25,000 service award in consumer class settlement); *Desai v. ADT Security Servs., Inc.*, No. 11-1925, DE 243 ¶ 20 (N.D. Ill. Feb. 27, 2013) (awarding $30,000 service awards in TCPA class settlement); *Landsman & Funk, P.C. v. Skinder-Strauss Assocs.*, No. 08CV3610 CLW, 2015 WL 2383358, at *9 (D.N.J. May 18, 2015), *aff'd*, 639 F. App'x 880 (3d Cir. 2016) (awarding $10,000 to class representative in consumer class case); *Lees v. Anthem Ins. Companies Inc*., No. 4:13CV1411 SNLJ, 2015 WL 3645208, at *4 (E.D. Mo. June 10, 2015) (awarding $10,000 to class representative in case involving nonconsensual calls to cell phones); *Am. Copper & Brass, Inc. v. Lake City Indus. Prod., Inc*., No. 1:09-CV-1162, 2016 WL 6272094, at *3 (W.D. Mich. Mar. 1, 2016) (approving a $10,000 service award where Plaintiff was deposed, reviewed documents, and assisted counsel); *Ikuseghan v. Multicare Health Sys*., No. C14-5539 BHS, 2016 WL 4363198, at *3 (W.D. Wash. Aug. 16, 2016) (finding an service award of $15,000 to be reasonable); *Hageman v. AT & T Mobility* LLC, No. CV 13-50-BLG-RWA, 2015 WL 9855925, at *4 (D. Mont. Feb. 11, 2015) (approving $20,000 service award in class settlement); *Cook*, 142 F.3d at 1016 (affirming $25,000 service award to plaintiff); *Heekin v. Anthem, Inc.*, No. 05-01908, 2012 WL 5878032, *1 (S.D. Ind. Nov. 20, 2012) (approving $25,000 service award to lead class plaintiff over objection); *Will v. Gen. Dynamics Corp.*, No. 06-698, 2010 WL 4818174, *4 (S.D. Ill. Nov. 22, 2010) (awarding $25,000 each to three named plaintiffs); *Benzion v. Vivint, Inc.*, No. 12-61826, DE 201 (S.D. Fla. Feb. 23, 2015) (awarding $20,000 service award in TCPA class settlement).   Accordingly, the requested service award of $10,000 for Plaintiff is reasonable and should be approved.

## VI.  <u>CONCLUSION</u>

WHEREFORE, Class Counsel respectfully request that the Court grant this motion and award Class Counsel $833,325.00 which represents one-third of the total settlement fund or

amounts to 35.13% of the fund after deducting administration costs and any service award, plus reimbursement of $14,277.64 in expenses. Class Counsel further requests that the Court approve a service award to Plaintiff Martin in the amount of $10,000.

Dated: March 7, 2018

Respectfully Submitted,

By: *s/ Keith J. Keogh*
KEOGH LAW, LTD.
Keith Keogh
Email: keith@keoghlaw.com
55 W. Monroe, Ste. 3390
Chicago, Il. 60603
Phone: 312-265-3258

*Attorneys for Plaintiff and the Proposed Class*